UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SHILA BOBYLKOVA,<br><br>                   Plaintiff,<br><br>    v.<br><br>PICK-N-PULL,<br><br>                   Defendant. | CASE NO. C19-5626-BHS-MAT<br><br>REPORT AND RECOMMENDATION |

INTRODUCTION

Plaintiff Shila Bobylkova, proceeding pro se, brought this suit pursuant to the Washington Law Against Discrimination ("WLAD"), Wash. Rev. Code § 49.60, et seq., alleging sex discrimination through harassment, wrongful termination, and retaliation. (Dkt. 1-2.)[1] Defendant Pick-N-Pull Northwest LLC ("PNP"), an Oregon-based entity (*see* Dkt. 1), filed a Motion for Summary Judgment. (Dkt. 16.) Plaintiff did not respond to the motion. Now, for the reasons

---

[1] Defendant removed the case to federal court based on diversity of citizenship under 28 U.S.C. § 1441(b). (Dkt. 1.) The Court subsequently granted a motion to withdraw filed by plaintiff's former counsel based on irreconcilable differences and a breakdown in communication. (*See* Dkts. 9 & 11.)

REPORT AND RECOMMENDATION
PAGE - 1

described below, the undersigned recommends defendant's unopposed Motion for Summary Judgment (Dkt. 16) be GRANTED and this case DISMISSED with prejudice.

BACKGROUND

Plaintiff alleges she was subjected to sexual harassment, retaliation, and termination during her brief employment with PNP. (*See* Dkt. 1-2.) Specifically, on December 14, 2018, plaintiff overheard male employees stating women who worked there were "fucking whores" and that they slept with them; an employee named Bob grabbed her breast, joked about it, and told her she had nice breasts; and an employee named Andrew asked if he could grab her breast and, after she said no, touched her left breast with his right hand. (*Id*., ¶9.) Plaintiff reported the incidents to her supervisor, Lex McQueen, who took no action. (*Id*.) On December 15, 2018, Andrew attempted to kiss plaintiff and slapped her "butt cheek." (*Id*., ¶10.) After plaintiff asked to have her schedule changed so she would not have to work with Bob and Andrew, McQueen fired her "on the spot." (*Id*.) Plaintiff maintains PNP failed to adequately investigate or act in response to her reports of harassment and discrimination, wrongfully terminated her as a result of her complaints, and that the termination was in retaliation for her engagement in protected activity.

PNP presents a starkly different depiction of events. On December 11, 2018, plaintiff arrived late for her new employee orientation, quit, and was re-hired after she asked to "try again." (Dkt. 18 (McQueen Declaration), ¶¶6-9.) She failed to appear as scheduled on December 12, 2018 and called to report an issue relating to her car. (*Id*., ¶10.) Plaintiff subsequently completed her orientation and, as of 2:00 p.m. on December 14, 2018, began to work, including an initial assignment of shadowing PNP employee Bob Lewis. (*Id*., ¶¶11-12.) That afternoon, McQueen and PNP employee Alisha Smith witnessed an incident in which Lewis accidentally poked or brushed against plaintiff's chest with his finger when he turned to point something out to a

REPORT AND RECOMMENDATION
PAGE - 2


Case 3:19-cv-05626-BHS   Document 21   Filed 12/16/19   Page 3 of 10

customer, not realizing plaintiff was standing so close to him. (*Id.*, ¶12-13 and Exs. E at 2 (Lewis witness statement) and 3 (Smith witness statement).) Lewis apologized, plaintiff accepted the apology, and work continued uneventfully. (*Id.*) At around 4:00 p.m., McQueen assigned plaintiff to shadow PNP employee Andrew Hitztaler and to "walk the yard" and notify customers PNP was closing at 5:00 p.m. (*Id.*, ¶14.)

In the morning of December 15, 2018, after asking to speak privately to McQueen, plaintiff reported Hitztaler had touched her butt when they walked the yard the previous evening. (*Id.*, ¶17.) McQueen attests she took the complaint seriously, stated no employee should touch plaintiff that way, and asked why plaintiff had not said anything the day prior. (*Id.*, ¶18.) When plaintiff requested to work a different schedule than Hitztaler, McQueen agreed and told plaintiff she would contact Human Resources. (*Id.*) When asked to return to the sales floor while McQueen spoke with Hitztaler, plaintiff refused and, similar to events occurring on December 11, 2018, said she did not "'need this job'" and extended her hand for a handshake. (*Id.*, ¶19.) McQueen shook plaintiff's hand and accepted her resignation. (*Id.*) Hitztaler denied plaintiff's allegation and noted he had been carrying a bullhorn in his hands while walking the yard. (*Id.*, ¶21 and Ex. E at 1 (Hitztaler witness statement).) McQueen emailed a description of the December 15th events to PNP Human Resources at 12:23 p.m. on that same day. (*Id.*, ¶¶22-23 and Ex. F.)

Plaintiff reported her allegations to the Lakewood Police Department, which commenced its investigation at 11:23 a.m. on December 15, 2018. (Dkt. 17, Ex. A; Dkt. 18, ¶23.) After taking statements, conducting follow-up, and forwarding the information to the prosecutor for review, the police brought no charges and closed the case with prosecution declined. (Dkt. 17, Ex. A.) PNP provides the police report and surveillance footage of the PNP salesfloor and yard. (*Id.*; Dkt. 18, Exs. C & D.)


PAGE - 3

# DISCUSSION

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party bears the initial burden of showing the district court an absence of evidence to support the nonmoving party's case. *Celotex Corp.*, 477 U.S. at 325. The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co.*, 475 U.S. at 585-87. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). A mere scintilla of evidence does not suffice to defeat summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Nor can the nonmoving party rely on allegations in the complaint or unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

Plaintiff did not file an opposition to defendant's motion. However, because the Court has

an affirmative duty to determine whether defendant met its initial burden of demonstrating a lack of genuine dispute of material fact for trial, the Court assesses the substance of the parties' claims. *See Martinez v. Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003) (explaining the duty to address a moving party's claim to judgment as a matter of law instead of granting summary judgment based on the non-moving party's failure to oppose).

A.    Sexual Harassment

The WLAD prohibits employers from discriminating in relation to the terms or conditions of employment based on a person's sex. RCW 49.60.180(3). "Harassment is actionable if a hostile work environment created by sexual harassment affects conditions of employment." *Adams v. Able Bldg. Supply, Inc.*, 114 Wn. App. 291, 296, 57 P.3d 280 (2002). To set forth a prima facie case of sexual harassment under the WLAD, plaintiff must show: "(1) offensive and unwelcome conduct that (2) was serious enough to affect the terms or conditions of employment, (3) occurred because of sex, and (4) can be imputed to the employer." *Id*. *Accord Antonius v. King Cty.*, 153 Wash.2d 256, 261, 103 P.3d 729 (2004).

Conduct amounting to sexual harassment must be more than simply offensive. *Adams*, 114 Wn. App. at 296. It must be "so extreme" as to amount to a change in the terms and conditions of employment and "both objectively abusive (reasonable person test) and subjectively perceived as abusive by the victim." *Id*. at 296-97. The Court looks to the totality of the circumstances to determine whether conduct is sufficiently severe or pervasive. *Id*. "Casual, isolated or trivial manifestations of a discriminatory environment do not affect the terms or conditions of employment to a sufficiently significant degree to violate the law." *Glasgow v. Georgia-Pacific Corp.*, 103 Wn.2d 401, 406, 693 P.2d 708 (1985). Also, where committed by a co-worker, harassment can be imputed to the employer only if the employer (1) authorized, knew of, or should

have known of the harassment and (2) failed to take reasonably prompt and adequate corrective action. *Davis v. Fred's Appliance, Inc.*, 171 Wash. App. 348, 362, 287 P.3d 51 (2012).

Defendant presents facts contrary to plaintiff's allegations, supported by a declaration from McQueen, statements from the individuals accused of harassment and from another PNP witness, the police report, McQueen's email to PNP Human Resources, and security footage. (*See* Dkts. 17 & 18.) This evidence supports the conclusion contact between Lewis and plaintiff was accidental and not objectively offensive behavior. As defendant observes, the security footage shows plaintiff and Lewis surrounded by other employees and customers and any physical contact between them not significant enough to be readily apparent. (*See* Dkt. 17, Ex. C.) Plaintiff's allegation alone does not establish a genuine issue of material fact precluding summary judgment.

There is less direct evidence relating to Hitztaler. Defendant points to, for example, Hitztaler's denial and the circumstances in which he was holding a bullhorn in his hands and in the presence of customers in the yard. The security footage is minimal, allowing only a brief glimpse of Hitztaler walking with plaintiff and with a bullhorn in his hand. (*See id.*, Ex. D.) Defendant also notes the narrow window of time, amounting to a total of some three hours, in which plaintiff was alleged to have been subjected to pervasive sexual harassment.

In any event, even taking plaintiff's allegations against Hitztaler as true, the isolated incidents, while clearly offensive and improper, would not suffice to support a claim of sexual harassment. *See, e.g., Brooks v. City of San Mateo*, 229 F.3d 917, 921-27 (9th Cir. 2000) (noting "highly reprehensible" conduct, but finding no hostile work environment where harasser forced his hand down the plaintiff's sweater and fondled her breasts on one occasion); *Nixon v. Franciscan Health Sys.*, C11-5076-BHS, 2012 U.S. Dist. LEXIS 32792 at *10-11 (W.D. Wash. Mar. 12, 2012) ("Courts have consistently found that a single act, absent pervasive conduct of an

egregious nature, is not sufficient to establish a hostile work environment."; finding single offensive touching on the buttocks and later witnessing of alleged harasser from a distance not objectively pervasive or severe enough to satisfy the elements of a hostile work environment claim), *aff'd sub nom. Nixon v. Catholic Health Initiatives*, No. 12-35276, 2015 U.S. App. LEXIS 4493 (9th Cir. Mar. 19, 2015); *MacDonald v. Korum Ford*, 80 Wn. App. 877, 886, 912 P.2d 1052 (1996) ("Although offensive and inappropriate this isolated indiscretion [in which a manager kissed the plaintiff at a party] cannot support a hostile environment claim.")  Nor does consideration of the offensive overheard remarks suffice to establish an environment so extreme it amounts to a change in the terms and conditions of employment. *See, e.g., Hedenburg v. Aramark Am. Food Servs.*, 476 F. Supp. 2d 1199, 1208-09 (W.D. Wash. 2007) (concluding that, even assuming the worst possible context for a supervisor calling plaintiff a "feminist' and ask[ing] her, 'is rape ever ok?", the isolated remarks were not severe or pervasive enough to violate federal or state law); *MacDonald*, 80 Wn. App. at 886-87 (further finding insufficient basis for a hostile work environment where a second co-worker had a habit of coming up behind the plaintiff, placing his hand on her back, and positioning himself in the hallway so she would brush against him when she passed by and a third co-worker used inappropriate language or gestures in her presence twice).

Finally, there is an absence of evidence supporting a contention the alleged sexual harassment is properly imputed to PNP. Defendant presents evidence showing that, in response to plaintiff's report, McQueen took prompt and adequate action, including agreeing to not schedule plaintiff with an accused employee, an immediate interview of the accused, a report to the human resources department shortly thereafter, and subsequent investigation into plaintiff's allegations, including the taking of witness statements and review of view surveillance. (*See, e.g.*, Dkt. 17, Ex. A at 5 (initial police investigation report: "Bobylkova then made the allegation against

REPORT AND RECOMMENDATION
PAGE - 7

Hitztaler but not against Lewis. McQueen told Bobylkova she was going to investigate the allegation, report to human resources and would change her schedule so that Hitztaler was not around her. Instead of accepting this Bobylkova quit.") and 18 (McQueen email to human resources at 12:23 p.m. on December 15, 2018).)

Plaintiff does not respond to defendant's motion. The Court, for the reasons explained above, finds no genuine issue of material fact in relation to plaintiff's claim of sexual harassment and defendant entitled to a judgment as a matter of law.

B.  Wrongful Termination and Retaliation

Plaintiff brings both wrongful termination and retaliation claims alleging her termination as a result of her engagement in protected activities. Defendant argues the wrongful termination claim is duplicative of the retaliation claim and therefore properly dismissed to prevent double recovery, pointing to cases finding claims for emotional distress and discrimination duplicative. *Francom v. Costco Wholesale Corp.*, 98 Wn. App. 845, 864-65, 991 P.2d 1182 (2000); *Johnson v. Department of Social & Health Servs.*, 80 Wn. App. 212, 230-31, 907 P.2d 1223 (1996).[2] Defendant otherwise disputes the allegation plaintiff was terminated or subjected to any retaliation.

Whether viewed as a wrongful termination or retaliation claim, the Court agrees defendant is entitled to summary judgment. In both claims, plaintiff contends she was terminated in retaliation for her complaints regarding harassment and discrimination. "In order to establish a prima facie case of retaliatory discharge, [plaintiff] must show she engaged in a statutorily protected activity, she was discharged or had some adverse employment action taken against her,

---

[2] Defendant also describes as incomprehensible an allegation appearing to reflect plaintiff's termination followed complaints about treatment related to her race. (*See* Dkt. 1-2, ¶25.) As defendant observes, the complaint otherwise addresses only allegations relating to sex. Because the inclusion of the word "race" appears to be a typographical error, the Court declines to further address this issue.

REPORT AND RECOMMENDATION
PAGE - 8

and retaliation was a substantial motive behind the adverse employment action." *Campbell v. State*, 129 Wn. App. 10, 22, 118 P.3d 888 (2005) (citing *Kahn v. Salerno*, 90 Wn. App. 110, 128, 951 P.2d 321 (1998)).

The Court finds no genuine dispute of material fact established in relation to plaintiff's allegation of retaliatory discharge. The evidence supports a conclusion plaintiff resigned shortly after reporting sexual harassment, after McQueen agreed plaintiff would not be scheduled to work at the same time as Hitztaler, and before McQueen could begin an investigation into the report. (*See, e.g.*, Dkt. 17, Ex. A at 5 ("Instead of accepting this Bobylkova quit.") and 18 ("I told her that I'm going to investigate this. I will be calling HR and I will be speaker [sic] to Andrew. I told her that I can change her days to the days he does not work but for today I need you back on the floor while I speak with Andrew. She said no and that I resign.")) Again, plaintiff did not reply to defendant's motion, leaving only her bare allegation of a retaliatory discharge. There is, as such, an absence of sufficient evidence to support this claim.[3] Defendant is therefore also entitled to dismissal of plaintiff's claims of wrongful discharge and retaliation.

C.  Sanctions

Defendant asserts plaintiff's lawsuit is frivolous. Defendant notes, for instance, the fact plaintiff's counsel withdrew not long after receiving a letter addressing the evidence and providing the security footage for review. (*See* Dkts. 9-10 and Dkt. 17, Ex. B.) Defendant asserts an improper purpose in bringing this lawsuit and expresses concern plaintiff will continue to seek

---

[3] Nor does plaintiff allege or the evidence support a claim of constructive discharge. *See, e.g., Peiffer v. Pro-Cut Concrete Cutting & Breaking Inc.*, 6 Wn. App. 2d 803, 829, 431 P.3d 1018 (2018) ("The elements of a claim of constructive discharge are that (1) the employer deliberately made working conditions intolerable, (2) a reasonable person in the employee's position would be forced to resign, (3) the employee resigned because of the intolerable condition and not for any other reason, and (4) the employee suffered damages as a result of being forced to resign.") (citing *Barnett v. Sequim Valley Ranch, LLC*, 174 Wn. App. 475, 489, 302 P.3d 500 (2013)).

REPORT AND RECOMMENDATION
PAGE - 9

legal action against PNP. Defendant requests the Court order that plaintiff cannot pursue any additional claims against PNP. The Court finds this request sufficiently addressed through a dismissal with prejudice.

## CONCLUSION

Because defendant is entitled to a judgment as a matter of law, the Court recommends the Motion for Summary Judgment (Dkt. 16) be GRANTED. The dismissal should be with prejudice.

## OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **January 3, 2020**.

DATED this 16th day of December, 2019.

Mary Alice Theiler
United States Magistrate Judge